UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12/12/05

----------------------------------------X

UNITED STATES OF AMERICA,

05 Cr. 522 (RWS)

- against -

SENTENCING OPINION

BOANERGES SANTOS,

Defendant.

----------------------------------------X

**Sweet, D.J.,**

Defendant Boanerges Santos, a/k/a ``Alexis Diaz,''
a/k/a ``Boanel Renito,'' a/k/a ``Boanerges Santo,'' a/k/a ``Boarel
Renito,'' ("Santos") has pleaded guilty to illegal reentry after
deportation subsequent to an aggravated felony conviction in
violation of 8 U.S.C. 1326(a) and (b)(2), a Class C Felony.
Santos will be sentenced to twenty-four months incarceration and
to three years supervised release.

**Prior Proceedings**

Santos was arrested by New York Police Department
officers on December 15, 2004, and remained in New York City
custody until May 3, 2005, when he was transferred into federal
custody for an alleged violation of federal immigration laws.  On
May 12, 2005, an indictment was filed charging Santos with
unlawfully entering the United States after having been deported

from the United States subsequent to convictions on April 10,
1998, in New York County Supreme Court, for criminal sale of a
controlled substance in the third degree and criminal sale of a
controlled substance in the second degree. On May 27, 2005,
Santos appeared before the Honorable Henry B. Pitman in the
Southern District of New York and allocuted to the criminal
conduct charged in the indictment without the benefit of a plea
agreement. This Court accepted Santos's plea on June 29, 2005.
Santos is scheduled to be sentenced on December 12, 2005.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in
United States v. Booker, 125 S. Ct. 738 (2005) and the Second
Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d
Cir. 2005), the sentence to be imposed was reached through
consideration of all of the factors identified in 18 U.S.C. §
3553(a), including the advisory Sentencing Guidelines (the
"Guidelines") establishing by the United States Sentencing
Commission. Thus, the sentence to be imposed here is the result
of a consideration of:

    (1)   the nature and circumstances of the offense and
          the history and characteristics of the defendant;

    (2)   the need for the sentence imposed --

        (A)   to reflect the seriousness of the offense, to
             promote respect for the law, and to provide
             just punishment for the offense;

(B)  to afford adequate deterrence to criminal
      conduct;
(C)  to protect the public from further crimes of
      the defendant; and
(D)  to provide the defendant with needed
      educational or vocational training, medical
      care, or other correctional treatment in the
      most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range
     established for --

     (A)  the applicable category of offense committed
          by the applicable category of defendant as
          set forth in the guidelines ...;

(5)  any pertinent policy statement ... [issued by the
     Sentencing Commission];

(6)  the need to avoid unwarranted sentence disparities
     among defendants with similar records who have
     been found guilty of similar conduct; and

     (7)  the need to provide restitution to any victims of

          the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all
the facts appropriate for determining a sentence, whether that
sentence is a so-called Guidelines sentence or not. See Crosby,
397 F.3d at 111.

## The Defendant

          Boanerges Santos was born on April 28, 1975, in San
Francisco de Macoris, Dominican Republic, to the marital union of
Juan Santos Burgos and Dulce Maria Castro. His father resides in

New York and works in a bakery.  His mother  resides in Santo
Domingo and owns a small clothing store in the Dominican Republic
but lives with her husband, Santos's father, when visiting New
York.   Santos has one sibling, who lives and works in New York.

Santos was raised by both of his parents and shares
close relationships with his mother, father, and sister.
According to the defendant, his parents are Jehovah's Witnesses,
and as such, always provided basic necessities for him and his
sister while he was growing up and continue to provide him with
advisement on a regular basis.

Santos reported moving from the Dominican Republic to
Puerto Rico during 1996.  He subsequently moved to New York in
1997, where he remained until he was deported to the Dominican
Republic in 2001.

He has shared a four-year relationship with his
girlfriend, who currently lives in Santo Domingo with the
defendant's mother and is not currently employed due to a
financial crisis in the Dominican Republic.   Santos has one child
with his long-time girlfriend, a son aged three.  His son resides
with his mother and paternal grandmother in the Dominican
Republic.  According to Santos, his son was recently diagnosed
with the beginning stages of asthma and now is taking medication
to prevent a full-blown case of asthma from developing.

4

The defendant reportedly attended Liceo Bonilla, located in San Franciso de Macoris, for approximately five years. Santos reported completing his third year of the four-year high school program at Liceo Bonilla and has not obtained his high school degree to date.

According to the defendant, he was licensed as an electrician in 2001 in Santo Domingo, after completing a one-month electrical course. Santos completed two courses in custodial maintenance and grounds keeping while incarcerated in 1998 and 2000.

Santos has reported a history of alcohol use, although he successfully completed a two-month alcohol treatment program in 2000. It is uncertain whether Santos is a risk for future drug abuse.

Although Santos has held jobs intermittently over the past four years, since his deportation to the Dominican Republic, Santos was not working immediately prior to his instant arrest and incarceration. Santos also reported that he has no assets and no liabilities.

**The Offense Conduct**

Santos is a citizen and national of the Dominican Republic, and is not and has never been a citizen of the United States.

On August 18, 1997, Santos was arrested by the New York City Police Department. In connection with that arrest, he was fingerprinted. On April 10, 1998, he pled guilty to criminal sale of a controlled substance in the third degree in New York Supreme Court.

On January 13, 1998, he was arrested again by the New York City Police Department. In connection with that arrest, he was fingerprinted once more. On April 10, 1998, in conjunction with the aforementioned charge, he pled guilty to criminal sale of a controlled substance in the second degree in New York Supreme Court.

On June 9, 2001, Santos was removed from the United States pursuant to an order of removal dated May 24, 2001. In connection with the deportation, a fingerprint was taken from him.

On December 15, 2004, Santos was arrested by the New York City Police Department in Manhattan for criminal sale of a

6

controlled substance on school grounds. Shortly after his arrest, these charges were dropped. However, as he had been placed on lifetime parole subsequent to his release and prior to his deportation in 2001, the instant arrest triggered a state parole violation, for which he was sentenced to a term of four months incarceration.

While he was incarcerated pursuant to his parole violation, federal authorities began investigating Santos's immigration status. An FBI agent assigned to Santos's case compared the fingerprints from the August 18, 1997 and January 13, 1998 arrests with those taken for the June 9, 2001 deportation, the December 15, 2004 arrest, and the May 3, 2005 federal arrest. The FBI agent concluded that all five fingerprints belonged to Santos.

The investigating agent conducted a search of Government records and found that as of May 3, 2005, Santos had not sought or received permission to reapply for admission from the Attorney General or Secretary for the Department of Homeland Security to re-enter the United States following his deportation.

## Relevant Statutory Provisions

The maximum term of imprisonment that may be imposed under the sole count against Santos is 20 years. See 8 U.S.C. §

1326(a) and (b)(2). If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years. See 18 U.S.C. § 3583(b)(2).

The defendant is eligible for not less than one nor more than five years probation per count. See 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. See 18 U.S.C. § 3563(a)(2).

The maximum statutory fine is $250,000. See 18 U.S.C. § 3571(b)(3). A special assessment of $100 is mandatory. See 18 U.S.C. § 3013.

## The Guidelines

The November 1, 2004 edition of the United States Sentencing Commission Guidelines Manual ("the Guidelines") has been used in this case for calculation purposes, in accordance with Guidelines § 1B1.11(b)(1).

The guideline for violation of 8 U.S.C. § 1326 is found in § 2L1.2(a), which provides for a base offense level of eight. Pursuant to § 2L1.2(b)(1)(A)(i), there is a sixteen-level increase because the defendant previously was deported and

8

unlawfully remained in the United States, after a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months. This results in a criminal offense level of twenty-four.

Santos has shown recognition of responsibility for his offense. Therefore his offense level is reduced two levels. See § 3E1.1(a). Furthermore, a one-level reduction is warranted, because Santos gave timely notice of his intention to plead guilty. See § 3E1.1(b). The resulting adjusted offense level is twenty-one.

## Criminal History

Santos was convicted on or about April 10, 1998 for criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in the second degree, for which he was sentenced to a concurrent term of 1 to 3 years and 3 years to life, respectively. Under § 4A1.1(a), each sentence, despite running concurrently, triggers three criminal history points, resulting in a total of six criminal history points.

According to Santos's New York State arrest record, he was paroled to United States Immigration on May 24, 2001, soon after which he was deported to the Dominican Republic, and assigned to lifetime parole.

At the time of the instant offense, Santos was on still on lifetime parole, despite having been deported. Pursuant to § 4A1.1(d), two criminal history points are added.

Given the foregoing discussion, Santos has a total of eight criminal history points, which places him in Criminal History Category IV.

**Sentencing Options**

Based on a total offense level of twenty-one and a Criminal History Category of IV, the Guidelines range of imprisonment is fifty-seven to seventy-one months.

The guideline range for a term of supervised release is at least two years but not more than three years. See § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required, but is optional. See § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute. See § 5D1.1(a).

Because the applicable guideline range is in Zone D of the Sentencing Table, Santos is not eligible for probation pursuant to § 5B1.1, application note #2.

The fine range for the instant offense is from $7500 to $75,000. See § 5E1.2(c)(3)(A).

## The Remaining Factors of Section 3553(a)

Having considered the Guidelines calculations, as set forth above, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a). Pursuant to all of the factors, and in particular 18 U.S.C. §§ 3553(a)(5) and (6), imposition of a non-Guidelines sentence is warranted here. Specifically, it is determined that the sentencing disparity created here, taken together with the double-counting of criminal history under the Guidelines for illegal reentry and the extended delay in transferring Santos into federal custody, warrants the imposition of a non-Guidelines sentence.

### The Fast Track Disparity

Section 3553(a)(6) instructs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). A number of courts, including some courts in this district, have recognized the unwarranted sentencing disparities that result from so-called "fast track" programs for dealing with

illegal reentry cases.  See United States v. Krukowski, 04 Cr.

1309 (LAK); United States v. Vernal Mark Deans, 03 Cr. 387 (KMW).


As way of background, in response to the increasing

number of illegal reentry arrests in certain geographical areas,

a number of judicial districts began utilizing fast-track

programs to manage charges brought under § 1326 more efficiently.

The programs work as follows:

> Through charge bargaining or stipulated departures,
> these programs allow a § 1326 offender who agrees to a
> quick guilty plea and uncontested removal to receive a
> reduced sentence . . . In the Southern District of
> California, for example, defendants subject to 20 year
> statutory maximums and guideline ranges of 70-87 months
> were allowed to plead guilty to an offense carrying a
> two year statutory maximum penalty.  See United States
> v. Banuelos-Rodriquez, 215 F.3d 969 (9th Cir. 2000).  In
> other border districts, defendants received downward
> departures to induce fast pleas. See [Erin T.
> Middleton, Fast-Track to Disparity: How Federal
> Sentencing Policies Along the Southwest Border Are
> Undermining the Sentencing Guidelines and Violating
> Equal Protection, 2004 UTAH L. REV. 827] at 829-30.
> Recently, in the PROTECT Act, Congress made fast-track
> programs official, see Middleton, at 838-40, and the
> Commission then enacted a guideline, § 5K3.1, providing
> for a 4 level departure on the government's motion
> pursuant to an early disposition program.

United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 963 (E.D.

Wis. 2005).  In other words, in districts utilizing fast-track

programs, offenders agree to a quick removal, saving the

Government resources, and in return they receive reduced

sentences.

Because offenders pleading guilty to illegal reentry in border districts with fast-track programs receive substantially lower sentences than those pleading guilty in other jurisdictions (such as the Southern District of New York), the defendant argues that the imposition of a sentence within the Guidelines range would create an unwarranted sentencing disparity between his sentence and the sentences imposed on defendants in fast-track jurisdictions.

The Government contends that Congress' enactment of the Protect Act in 2003 reflects a legislative determination that any disparities created as a result of the use of fast-track programs are warranted, that the charging decisions made within fast-track programs amount to exercises of prosecutorial discretion, and therefore result in warranted disparities, and that the disparity caused by fast-track programs is warranted in light of the absence of resources necessary to deal with the "explosion of illegal reentry cases in the Southwest without fast-track." Finally, it contends that the imposition of non-guideline sentences in cases like this would create greater disparities in the system.

Confronted with these contentions from the Government, the Honorable Lewis A. Kaplan recently rejected the Government's position that the sentencing disparities that arise from fast-track programs are not unwarranted within the meaning of Section 3553(a)(6). See United States v. Krukowski, 04 Cr. 1309 (LWK).

After ordering the Government to submit a comprehensive listing of the DOJ-approved fast-track disposition Guidelines for the 13 participating districts, Judge Kaplan explained:

> The question is when Section 3553(a)(6) speaks of "unwarranted sentencing disparities" what are the criteria against which one is to determine whether any given disparity is unwarranted? Inasmuch as the statute speaks of imposing a sentence that considers "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," the text of the Sentencing Reform Act strongly suggests that the measure of whether a disparity is warranted depends upon the characteristics of the defendants and their conduct, not overall considerations of law enforcement efficiency or administrative convenience.

United States v. Krukowski, 04 Cr. 1309 (LAK), Sent. Tr. at 5. Although Judge Kaplan ultimately declined to impose a non-Guidelines sentence based upon consideration of all of the 3553(a) factors, his determination of the meaning of "unwarranted disparities" is persuasive.

Also in this district, on October 28, 2005, the Honorable Kimba M. Wood imposed a non-Guidelines sentence based upon the unwarranted sentencing disparity in illegal reentry cases. See United States v. Vernal Mark Deans, 03 Cr. 387 (KMW). Judge Wood found that most fast-track illegal reentry jurisdictions on average reduce a sentence by four offense levels, and accordingly rejected the Guidelines range of seventy-seven to ninety-six months and imposed a sentence of fifty-one months.

While fast-track programs may create an efficient solution to an explosion of illegal reentry cases in border districts, they nevertheless result in the type of sentencing disparity cautioned against in section 3553(a)(6). As the Court in Galvez-Barrios, 355 F. Supp. 2d at 963, explained: "Because they operate only in certain districts (typically in southwestern states), an illegal alien stopped in California or Arizona will receive a lighter sentence than an alien convicted of the same offense and with the same record who is found in Wisconsin."

Courts confronted with this issue have also noted that the amount of the reduction one receives in a fast-track sentence is substantial. As Judge Kaplan noted, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." United States v. Bonnet-Grullon, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), aff'd, 212 F.3d 692 (2d Cir. 2000). Because the disparity created is of the type envisioned by § 3553(a)(6), under Crosby, it is appropriate for the Court to exercise discretion to minimize the sentencing disparity that fast-track programs create.

Section 3553(a)(5) also instructs this Court to consider policy statements issued by the Sentencing Commission in determining whether a non-guideline sentence should be imposed. The Sentencing Commission itself has expressed serious concern

15

about the unwarranted disparities that result from fast-track
programs.  As the Commission explained:

> The statutory requirement that the Attorney General
> approve all early disposition programs hopefully will
> bring about greater uniformity and transparency among
> those districts that implement authorized programs.
> Defendants sentenced in districts without authorized
> early disposition programs, however, can be expected to
> receive longer sentences than similarly-situated
> defendants in districts with such programs.  This type
> of geographical disparity appears to be at odds with
> the overall Sentencing Reform Act goal of reducing
> unwarranted disparity among similarly-situated
> offenders.

Report to Congress:  Downward Departures from the Federal

Sentencing Guidelines at 66-67 (emphasis added).  In identifying

the disparities that result from early disposition programs, like

fast-track programs, the Sentencing Commission invoked the

specific language of § 3553(a)(6), "unwarranted disparity," and

highlighted the type of geographical disparity present here.

Accordingly, the policy statement of the Sentencing Commission

also militates in favor of imposing a non-Guidelines sentence

based on its judgment that geographical disparities, like those

resulting from fast-track programs, result in unwarranted

disparities in sentencing.


Double-Counting of Criminal History


Santos argues that the advisory Guideline range of 57

to 71 months incarceration is unreasonable because it double

counts Santos's criminal history, using his prior convictions to

enhance not only his criminal history category but also to raise his offense level by 16.

As one court, considering this very issue, has noted recently, ''although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis.'' Galvez-Barrios, 355 F. Supp. 2d at 958. Judge Rakoff echoed this sentiment, citing this arbitrary aspect of the Guidelines, in justifying a below-Guidelines sentence for a defendant charged with conduct similar to that of Santos. See United States v. Ramon Ramirez, 04 Cr. 1021 (JSR).

In this case, double-counting is particularly inappropriate given the nature and circumstances surrounding Santos's prior offenses. Under the Guidelines, his offense level is increased 16 levels, from 8 to 24, based entirely on drug convictions received in 1998 when he was 22 years old. The result of this double-counting produces a Guideline range that is particularly unreasonable, given the non-violent nature of the offense. Without the 16 level enhancement, Santos's Guideline range would be 6 to 12 months incarceration.

These very same drug convictions are the sole basis for all eight of Santos's criminal history points. Despite receiving concurrent sentences for his two convictions, and despite being paroled after serving just three years, Santos's two drug

convictions are treated as unrelated cases under the Guidelines and thus each triggers three criminal history points. Furthermore, Santos continued to be on lifetime parole, despite being deported to the Dominican Republic, and, as such, was still on parole when he committed the instant offense. Thus, his two drug convictions in 1998, which landed him on lifetime parole, produced another two criminal history points, raising his total to eight.

Under § 4A1.3 of the Guidelines, a sentencing court can grant an upward or downward departure if a defendant's criminal history category does not adequately represent his criminal conduct. See U.S.S.G. § 4A1.3. In particular, section 4A1.3 instructs that ``[t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.'' Id.

Although Santos was convicted of two separate instances of criminal sale of a controlled substance in 1998, he has not committed any additional narcotics crimes. Once he was paroled, he was deported, and once back in the Dominican Republic, Santos began to reassemble his life. He returned to the United States illegally to find work and send money home to support his family and his son, who needed, and continues to need, special medical attention to treat his asthma. Although Santos was arrested in

the instant offense on suspicion of criminal drug activity, those charges were unsubstantiated and quickly dropped. Thus, while illegal reentry is a serious offense and warrants considerable punishment, it is important to note that Santos was not involved in criminal conduct when arrested on December 15, 2004.

Given Santos's characteristics, as well as the nature of his prior and instant offenses, the sentence recommended under the advisory Guidelines is unreasonably harsh. See United States v. Perez, 04 Cr. 376 (RJH) (April 14, 2005) (imposing a non-Guideline sentence in an illegal reentry case because the nature and age of the defendant's prior conviction made a guideline sentence unreasonably harsh).

To discount adequately the 16 level enhancement created by the double-counting of prior criminal conduct, a three level reduction will be imposed. See Galvez-Barrios, 355 F. Supp. 2d at 964 (stating a three level downward departure was reasonable based on defendant's motives to re-enter the country and to offset properly the double-counting of criminal history under the Guidelines).

## The Undue Delay in Transferring Santos into Federal Custody

Prior to Booker, the Second Circuit had recognized that a departure from the Guidelines may have been warranted where

there had been a delay in prosecuting a defendant charged with illegal re-entry, who had been held in state custody, from the time that the Immigration and Naturalization Service (``INS''), now the Bureau of Immigration and Customs Service (``BICE''), discovered the defendant's presence to the time of indictment. See United States v. Los Santos, 283 F.3d 422 (2d Cir. 2002) (finding that a four month delay was not unreasonable but that a longer delay could be).

The court in Los Santos held that two criteria must be met in order for the ``missed opportunity for concurrent sentencing'' departure to be applicable. First, the defendant must have been found in the United States early enough so that a timely prosecution could have resulted in concurrent sentences. Id. at 427. Second, the delay in prosecuting the defendant for illegal reentry once he has been found must either ``have been longer than a reasonable amount of time for the government to have diligently investigated the crime involved such that the delay takes the case out of the heartland'' or due to ``bad faith.'' Id. at 428. A person who is ``found'' to be present illegally in the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to them.'' Id. (quoting United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996).

The rationale underlying the court's decision in Los Santos is that it is unfair to prejudice a defendant, who otherwise would have had the opportunity to have his sentence for the immigration charge run concurrently with his state sentence, merely because of the ``fortuity of delay'' on the government's part. Id. at 428 (quoting United States v. Sanchez-Rodriguez, 161 F.3d 556, 564 (9th Cir. 1998) (en banc) (finding 10 month delay unreasonable)).

In this case, the Division of Parole notified immigration officials that Santos was in state custody on December 17, 2004, two days after he was arrested. Despite being notified in such a timely fashion, immigration officers did not bring Santos into federal custody until May 3, 2005, after his sentence for violation of parole had been fully discharged, denying him the opportunity to serve any of his federal sentence concurrently to his state sentence. Under the standard set forth in Los Santos, the five and one-half month delay is unreasonable for the purposes of considering a downward departure. See United States v. Garcia, 165 F. Supp. 2d 496, 498 (S.D.N.Y. 2001).

Based upon the foregoing, and consideration of, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from future crimes, it is determined that a non-Guidelines sentence which

addresses the unreasonable sentencing disparities resulting from fast-track programs, as well as the double-counting of criminal history under the Guidelines and the extended delay in transferring Santos into federal custody, is sufficient "but not greater than necessary" to punish Santos for the instant offense.

## The Sentence

It is determined that based upon Judge Wood's estimate that the average fast-track sentence is reduced by four-levels, see Vernal Mark Deans, 03 Cr. 387 (KMW), Santos's offense level is decreased from twenty-one to seventeen. Furthermore, based on the three level reduction granted in Galvez-Barrios for the double-counting of criminal history, Santos is more appropriately sentenced at an offense level of fourteen than at seventeen. An offense level of fourteen and a Criminal History Category of IV results in a Guidelines range of twenty-seven to thirty-three months. Finally, given the undue delay in having the defendant transferred into federal custody from state custody under the standard set forth in Los Santos, the defendant is hereby sentenced to twenty-four months incarceration.

Santos is also hereby sentenced to three years supervised release. Santos shall report to the nearest Probation Office within 72 hours of release from custody, and supervision will be in the district of his residence.

As mandatory conditions of supervised release, Santos shall (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance; (5) submit to one drug testing within fifteen days of placement on supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (6) cooperate in the collection of DNA as directed by the probation officer.

Santos shall comply with the standard conditions of supervision and shall also comply with the following special condition: he shall obey the immigration laws and comply with the directives of immigration authorities; he shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include urine testing at the direction and discretion of his probation officer.

Santos shall also pay to the United States a special assessment in the amount of $100, which shall be due immediately. Given Santos's inability to pay a fine, the fine in this case is waived.

It is so ordered.

New York, NY
December   /2   , 2005

ROBERT W. SWEET
U.S.D.J.